UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CINQUE STALLWORTH** | **CIVIL ACTION** |
| **VERSUS** | **NO:      10-4167** |
| **MARLIN GUSMAN, ET AL.** | **SECTION: "B" (4)** |

**PARTIAL REPORT AND RECOMMENDATION**

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. §§ 636(b)(1)(B) and (C), 1915e(2), and 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**.

On December 6, 2010, the undersigned held a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for defendants participating by conference telephone call.[2] Upon review of the record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

---

[1] 766 F.2d (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. 5. The plaintiff was sworn prior to testifying. The hearing was digitally recorded, but was inaudible. However, notes were retained from the hearing.

**I.     Factual Background**

  **A.     The Complaint**

Cinque Stallworth was a prisoner incarcerated at the Orleans Parish Prison ("O.P.P.") in New Orleans, Louisiana.[3] He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Sheriff Marlin Gusman, Deputy J. Mills, Captain Holt, and Sergeant Washington.

Stallworth alleges that on July 13, 2010, he was assaulted by other inmates with a mop stick and stabbed multiple times on the C-4 tier of O.P.P.[4] Stallworth claims that Deputy Mills witnessed the attack and attempted to act in concert by pushing him towards his attackers when he tried to escape. He also claims that Captain Holt and Sergeant Washington deliberately assigned him to C-4, which he alleges is a tier known for its violence. Stallworth states that he was taken to the University Hospital following the incident. He claims that as a result of his injuries, he now suffers from diminished capacity in range of motion, neural damage, and psychological damage.

Stallworth contends that he is a Louisiana Department of Corrections ("D.O.C.") inmate and should not have been detained at O.P.P. in the first place. He claims that "the constitutional and civil rights violations equal cruel and unusual [punishment]."[5]

Stallworth filed two grievances with respect to his location of confinement claim, but concedes that he did not utilize the prisoner grievance procedure for his other claims because he

---

[3] Rec. Doc. 1. Stallworth testified during the *Spears* Hearing that he would be released in January, 2011. However, in an abundance of caution, the Court addresses his claims since his release has not been confirmed.

[4] *Id.* at p. 5. Stallworth did not specify how many inmates assaulted him.

[5] *Id.*

found it "useless to continue the grievance procedure without response."[6] He stated that on three separate occasions, since July 13, 2010, his grievances have not been addressed.[7]

Stallworth requests a transfer away from the O.P.P. administration.[8] He also seeks adequate medical care and financial compensation in the amount of $500,000 "for the lifetime of diminished capacity [and] the psychological effects from being exposed to a dangerous and [traumatic] existence."[9]

### B. Grievance Submissions

Stallworth filed two grievances prior to the complaint. The first grievance was filed on September 7, 2010.[10] In this grievance, Stallworth requested a transfer to a D.O.C. facility because he believed East Baton Rouge and Orleans Parishes made a mistake in calculating his jail credit. He also stated that he had a parole eligibility date coming up soon and a transfer would accommodate his parole eligibility "because of the paper work and the [direct] contact [he] will have with the D.O.C. record room." Stallworth requested "to be transferred as soon as possible" because "it's difficult taking care of [his] legal problems over the phone from [O.P.P.]."

---

[6]Stallworth does not specify which grievances he previously filed or whether they were in connection to any of the instant claims.

[7]*Id.*

[8]*Id*. at p. 5. The record is unclear as to whether Stallworth requests a transfer to solely a D.O.C. facility or seeks a transfer to a drug treatment or Blue Walters treatment center as well.

[9]*Id.*

[10]*Id.* at p. 8.

On September 7, 2010, Warden J. Brown determined that Stallworth's grievance statement submitted to the Orleans Parish Sheriff's Office was not a grievance.[11] On September 8, 2010, Chief G. Bordelon informed Stallworth that D.O.C. will be notified of his request.[12]

Stallworth filed a second grievance on September 8, 2010.[13] He stated that the grievance was "being written for purposes of record with this institution and other facilities." In it, he requested that the Orleans Parish Sheriff's Office respond with step two of the grievance procedure. He stated that he had "in [his] possession a court order, demanding [he] be admitted to a drug treatment or Blue [Walters] treatment center, effectuated March 11, 2010." He requested that the Orleans Parish Sheriff's Office expedite his transfer to a D.O.C., drug treatment, or Blue Walters program. Stallworth asked that the Orleans Parish Sheriff's Office comply with these requests so that a clear record of activity would be apparent. On September 8, 2010, he received a response from Warden J. Brown indicating that it was not a grievance.[14] That same day, he also received a response from Chief G. Bordelon indicating that D.O.C. will be notified of his request.[15]

### C. *Spears* **Hearing**

A *Spears* Hearing was conducted on December 6, 2010.[16] During the hearing, Stallworth testified that he was housed on the C-4 tier of O.P.P. for two days. He stated that he had just

---

[11]*Id.*

[12]*Id.* at p. 9.

[13]*Id.* at p. 6.

[14]*Id.*

[15]*Id.* at p. 7.

[16]Rec. Doc. 5. Information in this section is taken from the undersigned's notes during the *Spears* Hearing because the electronic audio recording is inaudible.

replaced an inmate who had been stabbed. Stallworth further testified that he attempted to call for help while being attacked, and there were no guards on watch at the time of the incident. He alleged that because there were no security cameras or surveillance, Sheriff Gusman was not able to properly protect the inmates.

Stallworth also testified that he believed the deputies committed a classification error in placing him on the C-4 tier of O.P.P. He alleges that C-4 is a tier reserved for violent offenders. However, Stallworth testified that he was charged with simple robbery. He further alleged that he pled guilty to the charge and was sentenced to two years.

Following the attack, Stallworth testified that he was placed on the medical tier for two months.[17] He recalled receiving stitches for his injuries and being prescribed the proper medical treatment. Stallworth additionally alleged that after receiving treatment for his injuries, he continued to experience pain in his neck, back, and shoulder.[18] During the *Spears* Hearing, Stallworth mentioned that he was scheduled to be released from O.P.P. the following month.[19]

## II. Standard of Review

Title 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v.*

---

[17]To Judge: This part of the *Spears* Hearing notes are unclear. The notes indicate that Stallworth was moved to Conchetta, though it is not mentioned at what point this occurred. The notes also indicate that after spending two months on the medical tier, Sergeant Washington physically forced Stallworth onto D-4. However, it is unclear which tier D-4 is or how placement in Conchetta and/or tier D-4 may be relevant to any of Stallworth's claims.

[18]Liberally construed, the plaintiff alleges that he received inadequate medical care. This claim is addressed in Section E, *infra*.

[19]*See* Footnote 3.

*Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III. Analysis**

The facts of Stallworth's complaint and subsequent *Spears* Hearing implicate several claims. Under a broad reading, he asserts a violation of his due process rights because he was wrongfully placed in O.P.P. rather than a D.O.C. facility.[20] Second, he claims a classification error resulting in his placement on the wrong tier within O.P.P.[21] Third, he brings a failure to protect claim due to the

---

[20] It is unclear which of the named defendants Stallworth holds responsible for this claim.

[21] Stallworth presumably asserts this claim against Captain Holt and Sergeant Washington for allegedly assigning him to the wrong tier.

alleged attack resulting in his injuries.[22] Fourth, he claims inadequate medical treatment for injuries sustained during the attack.[23]

Stallworth stated in his complaint that he did not utilize the prisoner grievance procedure for his other claims because he found it "useless to continue the grievance procedure without response."[24] Stallworth seeks as relief a transfer away from the O.P.P. administration, proper medical care, and financial compensation.

### A.     Supervisory Liability

Stallworth named Sheriff Gusman as a defendant in this matter.  He did not allege specific actions on behalf of Sheriff Gusman in his original complaint. During the *Spears* Hearing, however, Stallworth testified that Sheriff Gusman was unable to properly protect inmates and held him accountable for the lack of cameras or surveillance.  Thus under a broad reading, Stallworth has named Gusman as a defendant because of his supervisory role over O.P.P. and failure to protect Stallworth from harm.  To the extent that Stallworth asserts claims against Gusman regarding his location of confinement, classification error within the prison, and medical indifference, he is nonetheless an improper defendant.

A supervisory official, like Sheriff Gusman, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate, whether a deputy or doctor, allegedly violated the plaintiff's constitutional rights.  *See Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979).  He

---

[22] Under a broad reading, he asserts this claim against all named defendants.

[23] Stallworth does not specify a defendant for this claim.

[24] The Court notes that exhaustion under the Prison Litigation Reform Act is an affirmative defense and that inmates need not "specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).

may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980).

In this case, Stallworth fails to allege that Sheriff Gusman was personally involved in any of the acts regarding his location of confinement, tier placement, being attacked by other inmates, or receiving inadequate medical care. An official is deliberately indifferent to an inmate's medical needs or safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Stallworth has not alleged that Sheriff Gusman was in any way personally aware of the acts about which he complains.

### B.    Location of Confinement[25]

Stallworth contends that he is a D.O.C. inmate and should not be housed at O.P.P.[26] He believes there was an error in calculation of his jail credit resulting in his placement in a parish facility.[27] Stallworth mentioned in his initial grievance that a transfer to a D.O.C. facility would accommodate his upcoming parole eligibility, reasoning that "it will be easier for my family and I; because of the [paperwork] and the [direct] contact I will have with the D.O.C. record room, and [state parole board]."[28] In a separate grievance, Stallworth also requested a transfer to a drug

---

[25]This analysis addresses Stallworth's due process claim that he was wrongfully placed in an O.P.P. facility. His claim alleging wrongful placement on a violent tier within O.P.P. is addressed under Section C., *supra*.

[26]Rec. Doc. 1, p. 5.

[27]*Id.* at p. 8.

[28]*Id.*

treatment facility, alleging that he possessed a court order "demanding [he] be admitted to a drug treatment or Blue [Walters] treatment center."[29]

It is well settled that the Due Process Clause does not, by itself, give a prisoner a protected liberty interest in the location of his confinement, even if the environment of one prison may be "much more disagreeable" to the prisoner than another. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Further, a prisoner has no liberty interest in being housed in any particular facility where the state statute vests discretion to the state officials to carry out their official function. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.1996); *see also Yates v. Stalder*, 217 F.3d 332 (5th Cir. 2000).

Louisiana Revised Statute Annotated § 15:566(B) sets forth the exceptions under which prisoners convicted of state criminal offenses are to be sent to D.O.C. facilities from parish jails.[30] In addition, La. Rev. Stat. Ann. § 15:824, authorizes the Director of Corrections to decide to which

---

[29]*Id.* at p. 6

[30]La. Rev. Stat. Ann. § 15:566(B) provides:

B. The sheriff or his duly qualified deputy, within thirty days of the date upon which sentence to imprisonment at hard labor has been imposed, shall deliver the prisoner to the state correctional institution designated by the Department of Corrections, unless:
(1) The governor shall have reprieved said prisoner; or
(2) The prisoner is retained in the parish pursuant to R.S. § 15:824(B) or R.S. § 15:832; or
(3) The prisoner has been admitted to post-conviction bail; or
(4) The prisoner has obtained an order of appeal and the secretary of the Department of Corrections agrees to take custody of the prisoner. In other cases in which an order of appeal is obtained, the sheriff shall deliver the prisoner to the department within fifteen days of the date upon which the highest court of the state to which the prisoner may appeal as of right has affirmed the conviction and sentence. If the prisoner has filed a timely application for rehearing, the sheriff shall deliver the prisoner within fifteen days of the date upon which the rehearing is denied. Application for writs of certiorari or review to the state supreme court shall not prevent transfer under the provisions of this Subparagraph; or
(5) The court, for good cause, stays for a specified period a transfer to the Department of Corrections pursuant to Paragraph (4) above.

penal institution an inmate should be delivered or transferred.[31] The Director of Corrections has broad discretion regarding the placement and transfer of state prisoners. *See Santos v. La. Dept. of Corr. Secretary*, 1996 WL 89260 at *4 (E.D. La. Feb. 28, 1996) (La. Rev. Stat. Ann. § 15:824(A), (B) does not give D.O.C. prisoners a constitutionally protected right to be housed in a particular facility); *see also* La. Rev. Stat. Ann. § 15:566(B); *State v. Sylvester*, 648 So.2d 31, 33 (La. App. 4th Cir. 1994).

The State of Louisiana, by its broad discretionary statutes, has not created a protected liberty interest in being housed in a particular facility or being transferred from a parish prison to a different facility. *Santos*, 1996 WL 89260 at *4. The Court therefore recommends dismissal of Stallworth's claim alleging wrongful placement in O.P.P. as legally frivolous and for failure to state a claim upon which relief can be granted.

### C. <u>Improper Classification</u>

---

[31]La. Rev. Stat. Ann. §15:824(A) and (B) provides in pertinent part:

A. Notwithstanding any provision of law to the contrary, any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department; however, no juvenile may be transferred to a penal or correctional facility for persons committed by a court having criminal jurisdiction except in accordance with the provisions of R.S. § 15:1062.

B. (1)(a) In the event any individual has been committed to the department for confinement which is or has been delayed or prevented after final sentence by court order restricting the department from institutionalizing the individual, or when the individual is not institutionalized in a state penal or corrections institution because of lack of facilities under the control of the department, or the department otherwise refused to accept the individual for confinement, which resulted or has resulted in the individual being confined in a parish jail or institution after final sentence, or when he is being held in the parish jail without bail, pending an appeal, the department shall pay to each parish sheriff, or to the governing authority of those parishes in which the governing authority operates the parish jail, for keeping and feeding the individual in the parish jail the sum of twenty-one dollars per day from date of sentencing until the individual is confined in a penal or correctional institution under the supervision of the department. . . .

Stallworth alleges in his complaint that Captain Holt and Sergeant Washington deliberately assigned him to a violent tier. During the *Spears* Hearing, he claimed that there was an error in classification and that he should not have been placed on tier C-4. Stallworth testified that he was charged with simple robbery and presumably alleges that given the nature of his crime, he should not have been placed on a tier reserved for violent criminals.

The law is well settled that inmates do not have a protected property or liberty interest in their custodial classification or placement in the jail. *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir. 1988). The placement and classification of prisoners is a matter left to the discretion of prison officials. *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir.1990); *Jones v. Diamond*, 636 F.2d 1364, 1376 (5th Cir. 1981) (en banc).[32] As such, the federal courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979); *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990).

Considering this, the federal courts have recognized that "[i]nmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." *Ricker v. Leapley*, 25 F.3d 1406, 1409 (8th Cir. 1994); *accord*, *Canterino v. Wilson*, 869 F.2d 948, 953 (6th Cir. 1989) (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)). "Classification of inmates in Louisiana is a duty of the . . . [jailer] and an inmate has no right to a particular classification under state law." *Woods v. Edwards*, 51 F.3d 577, 581-82 (5th Cir. 1995) (citation omitted). Thus, in Louisiana, "[i]nmates

---

[32]*Overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986), *aff'd sub nom Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987).

have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), *abrogated on other grounds by Booth v. Churner*, 532 U.S. 732, 735 (2001); *accord*, *Jones v. Roach*, 2006 WL 2474746 at *1 (5th Cir. 2006).

In the instant case, Stallworth testifies that he thinks there was an error in classification leading to his placement on tier C-4. However, the Fifth Circuit has continuously held, post- *Sandin*, "that an inmate has no protectable liberty interest in his classification." *Wilkerson v. Stalder*, 329 F.3d 431, 435-36 (5th Cir. 2003) (citing *Sandin v. Connor*, 515 U.S. 472 (1995)). The prison officials were at liberty to classify Stallworth in the manner necessary to maintain discipline at the prison. Consequently, Stallworth's claim regarding a classification error is frivolous and otherwise fails to state a claim for which relief can be granted.

### D. **Failure to Protect**

Under a broad reading, Stallworth alleges that the defendants failed to protect him from an unexpected attack by other inmates. He specifically stated that "Sheriff Gusman is the custodian," Deputy Mills "watched the stabbing and beating occur and attempted to act in concert by pushing [him] back to [his] attackers when [he] tried to escape," and "Captain Holt and Sergeant Washington deliberately assigned [him] to C-4," a tier known for violence.[33] Insofar as their actions were intentional, with Deputy Mills acting in concert with the attackers, and Captain Holt and Sergeant

---

[33]Rec. Doc. 1, p. 5.

Washington deliberately assigning the plaintiff to a dangerous tier, Stallworth appears to assert a conspiratorial act against these defendants to endanger his safety.

Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 650 (5th Cir. 1996). A prison official violates the Eighth Amendment when two requirements are met. *Farmer*, 511 U.S. at 834. First, the failure to protect from harm must be sufficiently serious, which means that the inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm. Second, the prison official must have acted with a deliberate indifference to the inmate's health or safety. *Id.*

Deliberate indifference means that a prison official is liable only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Id*. at 847. The official must be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists and he must also draw that inference. *Id*. at 837. Subjective recklessness, as used in the criminal law, is the appropriate test for deliberate indifference. *Norton v. Dimazana.* 122 F.3d 286, 291 (5th Cir. 1997).

As already discussed, Sheriff Gusman is an improper defendant for his lack of involvement in the alleged incidents.[34] To the degree that Captain Holt and Sergeant Washington deliberately placed Stallworth on tier C-4 and did so as part of a conspired effort to endanger his safety, these defendants were aware of a substantial risk of serious harm and failed to take reasonable measures to abate it. Furthermore, accepting the plaintiff's allegations regarding Deputy Mills as true, the

---

[34]*See supra* Section A.

plaintiff has also stated a cognizable claim that Deputy Mills failed to protect him from a known harm. As a result, the Court finds that the failure to protect claim against Captain Holt, Sergeant Washington, and Deputy Mills should proceed forward.

### E. Medical Indifference

Stallworth requested in his complaint that he receive adequate medical care. He testified during the *Spears* Hearing that he was only prescribed the proper medical treatment. He further testified that he continued to experience neck pain, back pain, and shoulder pain.[35] Stallworth presumably asserts a medical indifference claim. However, he does not specify a particular defendant with regard to this claim. To the extent that he alleges medical indifference against any or all of the named defendants in the complaint, his claim is frivolous.

As already mentioned, Sheriff Gusman is an improper defendant.[36] Furthermore, he does not set forth specific allegations with respect to his medical care against any of the remaining defendants. In the absence of such allegations, the Court finds that Stallworth's medical indifference claim should be dismissed as frivolous and for otherwise failing to state a claim for which relief may be granted.

### IV. Recommendation

It is therefore **RECOMMENDED** that Stallworth's 42 U.S.C. § 1983 claims against the defendant, Sheriff Marlin Gusman, be **DISMISSED WITH PREJUDICE** as frivolous pursuant to 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e, and for otherwise failing to state a claim upon which relief can be granted.

---

[35]*See* footnote 12.

[36]*See supra* Section A.

It is further **RECOMMENDED** that the plaintiff's medical indifference claim be **DISMISSED WITH PREJUDICE** as frivolous pursuant to 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e, and for otherwise failing to state a claim upon which relief can be granted.

It is further **RECOMMENDED** that the plaintiff's § 1983 failure to protect claims against the defendants, Captain Holt, Sergeant Washington, and Deputy J. Mills, proceed forward since these claims are not frivolous.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[37]

New Orleans, Louisiana, this 8th day of August, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[37]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.