UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CINQUE STALLWORTH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-4167** |
| **MARLIN GUSMAN, J. MILLS, CAPTAIN HOLT, SGT. WASHINGTON** | **SECTION "B"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On December 6, 2010, the undersigned held a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for defendants participating by conference telephone call.[2] Upon review of the record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 5. The plaintiff was sworn prior to testifying. The hearing was digitally recorded, but was inaudible. However, notes were retained from the hearing.

I.   **Factual Summary**

    A.   **The Complaint**

Cinque Stallworth was a prisoner incarcerated at the Orleans Parish Prison ("OPP") in New Orleans, Louisiana, at the time of the filing of this *pro se* and *in forma pauperis* complaint.[3] He filed this complaint pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman, Deputy J. Mills, Captain Holt, and Sergeant Washington.

Stallworth alleges that on July 13, 2010, he was assaulted by other inmates with a mop stick and stabbed multiple times on the C-4 tier of OPP.[4] Stallworth claims that Deputy Mills witnessed the attack and attempted to act in concert by pushing him towards his attackers when he tried to escape. He also claims that Captain Holt and Sergeant Washington deliberately assigned him to C-4, which he alleges is a tier known for its violence. Stallworth states that he was taken to the University Hospital following the incident. He claims that as a result of his injuries, he now suffers from diminished capacity in range of motion, neural damage, and psychological damage.

Stallworth contended that he is a Louisiana Department of Corrections ("D.O.C.") inmate and should not have been detained at OPP in the first place. He claims that "the constitutional and civil rights violations equal cruel and unusual [punishment]."[5]

Stallworth filed two grievances complaints about this incident. The first grievance was filed on September 7, 2010. In this grievance, Stallworth requested a transfer to a D.O.C. facility because he believed East Baton Rouge and Orleans Parishes made a mistake in calculating his jail credit. He

---

[3]Rec. Doc. No. 1.

[4]*Id*., p.5. He did not specify how many inmates were involved.

[5]*Id*.

also stated that he had a parole eligibility date coming up soon and a transfer would accommodate his parole eligibility "because of the paper work and the [direct] contact [he] will have with the D.O.C. record room." Stallworth requested "to be transferred as soon as possible" because "it's difficult taking care of [his] legal problems over the phone from [OPP]."

On September 7, 2010, Warden J. Brown determined that Stallworth's grievance statement submitted to the Orleans Parish Sheriff's Office was not a grievance. On September 8, 2010, Chief G. Bordelon informed Stallworth that D.O.C. will be notified of his request.

Stallworth filed a second grievance on September 8, 2010. He stated that the grievance was "being written for purposes of record with this institution and other facilities." In it, he requested that the Orleans Parish Sheriff's Office respond with step two of the grievance procedure. He stated that he had "in [his] possession a court order, demanding [he] be admitted to a drug treatment or Blue [Walters] treatment center, effectuated March 11, 2010." He requested that the Orleans Parish Sheriff's Office expedite his transfer to a D.O.C., drug treatment, or Blue Walters program. Stallworth asked that the Orleans Parish Sheriff's Office comply with these requests so that a clear record of activity would be apparent. On September 8, 2010, he received a response from Warden J. Brown indicating that it was not a grievance. That same day, he also received a response from Chief G. Bordelon indicating that D.O.C. will be notified of his request.

Stallworth requests a transfer away from the OPP administration. He also seeks adequate medical care and financial compensation in the amount of $500,000 "for the lifetime of diminished

capacity [and] the psychological effects from being exposed to a dangerous and [traumatic] existence."[6]

### B.   The *Spears* Hearing

At the *Spears* Hearing, Stallworth testified that he was housed on the C-4 tier of OPP for two days. He stated that he had just replaced an inmate who had been stabbed. Stallworth further testified that he attempted to call for help while being attacked, and there were no guards on watch at the time of the incident. He alleged that because there were no security cameras or surveillance, Sheriff Gusman was not able to properly protect the inmates.

Stallworth also testified that he believed the deputies committed a classification error in placing him on the C-4 tier of OPP He alleges that C-4 is a tier reserved for violent offenders. However, Stallworth testified that he was charged with simple robbery. He further alleged that he pled guilty to the charge and was sentenced to two years.

Following the attack, Stallworth testified that he was placed on the medical tier for two months. He recalled receiving stitches for his injuries and being prescribed the proper medical treatment. Stallworth additionally alleged that after receiving treatment for his injuries, he continued to experience pain in his neck, back, and shoulder. During the *Spears* Hearing, Stallworth mentioned that he was scheduled to be released from OPP the following month.

### II.   Procedural Background

On August 8, 2011, the undersigned issued a Partial Report and Recommendation in which it was recommended that Stallworth's claims, except the failure to protect claim against Captain Holt, Sergeant Washington, and Deputy J. Mills, be dismissed with prejudice as frivolous and for failure to

---

[6]*Id.*

state a claim for which relief be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A and 42 U.S.C. § 1997e.[7] The Court also issued an order for a scheduling conference relative to the remaining claims.[8]

This order and the partial report were mailed to Stallworth at OPP, which was the only address of record. The envelope containing the partial report was returned to the clerk of court as undeliverable marked "Rolled Out-Return to Sender."[9] The envelope containing the other order was returned marked "Return to Sender - Undeliverable as Addressed - Unable to Forward."[10]

The District Judge thereafter adopted the report and issued an Order and a Rule 54(b) Judgment dismissing the claims as recommended.[11] These documents were also mailed by the clerk of court to Stallworth at his OPP address of record. The envelopes were returned to the clerk of court, with the one containing the judgment bearing the words "Return to Sender - Not Deliverable as Addressed - Unable to Forward."[12]

Upon discovery of the returned mail in the record, the undersigned Magistrate Judge's staff determined that Stallworth had been released from prison and the prison officials were unable to provide the Court with a last known address.[13] The Court issued a Rule to Show Cause to Stallworth, which could only be sent to the address of record, ordering him to show cause why his remaining claims should not be dismissed for failure to prosecute and for failure to inform the Court of his current

---

[7]Rec. Doc. No. 12.

[8]Rec. Doc. No. 13.

[9]Rec. Doc. No. 15.

[10]Rec. Doc. No. 14.

[11]Rec. Doc. Nos. 16, 17.

[12]Rec. Doc. Nos. 19, 20.

[13]Rec. Doc. No. 18.

address as required by L.R. 11.1, L.R. 41.3.1, and the Plaintiff's Declaration appearing on page 10, paragraph IV of the Complaint.[14] The envelope was returned to the clerk of court on October 3, 2011, with the notations "Rolled Out" and "Return to Sender - Not Deliverable as Addressed  - Unable to Forward."[15] The Court has been unable to obtain another forwarding address. Stallworth has not contacted the Court about his case or provided the Court with a current address.

**III.     Analysis**

Rule 41(b) of the Federal Rules of Civil Procedure specifically provides that a court may, in its discretion, dismiss a plaintiff's claim for failure to prosecute or for failure to comply with the Federal Rules of Civil Procedure or any order of the court. A Rule 41(b) dismissal is considered an adjudication on the merits. Fed. R. Civ. P. 41(b). In determining whether to dismiss a claim, courts have traditionally considered the extent to which the plaintiff, rather than his counsel, has been responsible for any delay or failure to comply with a rule or order. *See*, *e.g.*, *Silas v. Sears, Roebuck & Co.*, 586 F.2d 382 (5th Cir. 1978); *Ramsay v. Bailey*, 531 F.2d 706 (5th Cir. 1976). In this case, the plaintiff is without counsel and is responsible for the prosecution of his case.

The record shows that the Court's prior orders were mailed to Stallworth at the address of record, the only address provided by Stallworth, and the envelopes containing the orders were returned as undeliverable. Stallworth has failed to provide the Court with his current contact information as required by L.R. 11.1. He was made aware of his continuing obligation to keep the Court informed of his whereabouts as reflected on page 10 of his Complaint (Rec. Doc. No. 1), where he signed the Plaintiff's Declaration on September 18, 2010.

---

[14] Rec. Doc. Nos. 18 and 1, p.10.

[15] Rec. Doc. No. 21.

Contrary to these mandates, Stallworth has not notified the Court of his current contact information, and he otherwise has not contacted the Court about his case. In fact, the record demonstrates that he did not provide notice to the Court of his transfers and/or release from jail. Stallworth has not complied with the Court's orders or taken any effort to further prosecute this case. Accordingly, dismissal of the remainder of Stallworth's claims against the remaining defendants is proper under Fed. R. Civ. P. 41(b) and the rules of this Court for his failure to prosecute this case.

## IV.   Recommendation

It is therefore **RECOMMENDED** that Cinque Stallworth's remaining 42 U.S.C. § 1983 claims for failure to protect claims against the defendants, Captain Holt, Sergeant Washington, and Deputy J. Mills, be **DISMISSED WITH PREJUDICE** under Fed. R. Civ. P. 41(b) for the plaintiff's failure to prosecute, all other claims and defendants having been previously dismissed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[16]

New Orleans, Louisiana, this 10th day of November, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[16]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.